UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

GERALD WAYNE HEARD

CRIMINAL ACTION

NO. 15-84-JJB-RLB

## RULING ON MOTION TO SUPPRESS

This matter is before the Court on the Defendant Gerald Heard's Motion to Suppress Evidence (Doc. 22). The United States of America (the "Government") filed an opposition (Doc. 25). The Court conducted a suppression hearing on September 14, 2015. The defendant submitted a post-hearing memorandum (Doc. 32). For the reasons stated herein, the Defendant Gerald Heard's Motion to Suppress Evidence (Doc. 22) is **DEFERRED**.

### Background

The Court makes the following factual findings based on the evidence presented at the September 14, 2015, suppression hearing. On April 14, 2015, at approximately 11:35 P.M., Baton Rouge Police Department Officers James Crisler ("Officer Crisler") and Howie Lake, II ("Officer Lake") were on patrol near the 1300 block of North Boulevard—an area Officer Crisler knew to be a "high-drug/high-crime area." The officers spotted Gerald Heard ("Heard") walking in the middle of the street, which the officers determined to be a violation of a Baton Rouge City Ordinance prohibiting pedestrians walking on roadways when a sidewalk is available. *See* Baton Rouge City Code Title 11 § 95. Officer Crisler observed Heard look toward the marked police cruisers and then change direction and begin walking south across North Boulevard and its accompanying access roads. According to the officers, this behavior raised their suspicions and the officers decided to stop Heard and question him.

1

During the stop, Officer Lake conducted a consensual pat down and questioned Heard. Specifically, Officer Lake questioned Heard about his use of drugs and his destination. Meanwhile Officer Crisler, having observed Heard drop "a piece of paper or something like that on the ground," followed the path the officers observed Heard take prior to stopping him. *Suppression Hr'g Tr.* 18:14–15, Doc. 31. During the course of the interaction, Officer Crisler observed Heard's mannerisms and suspected that Heard may be under the influence of crack cocaine. The officers detained Heard for nearly two minutes until Officer Crisler located a pile of copper brillo, a substance that Officer Crisler recognized as being commonly used as drug paraphernalia. Approximately a minute-and-a-half later, Officer Crisler discovered a loaded Taurus PT111 9mm handgun (serial #TD086529) in the path that Heard had walked. He observed that the area around the handgun was wet due to the recent rain but noticed that the firearm was dry. Heard was then placed into handcuffs and seated in the rear of Officer Lake's police cruiser.

Officer Lake verbally advised Heard of his *Miranda* rights and Heard acknowledged that he understood those rights.[1] When the questioning began, Heard denied having the gun but later admitted possessing it. Heard told officers that he was carrying the gun in his pants pocket, but when he saw the police cars approaching, he threw the gun to the ground. Heard admitted to having the gun for three to four days before his arrest. However, Heard would not disclose where he obtained the gun.

Officer Lake checked the gun through a police database and found that it had been reported stolen out of New Orleans. Officer Lake then checked Heard's criminal history and found that he

---

[1] Officer Lake asked Heard if he understood his *Miranda* rights three times. After not responding twice, Heard indicated that he understood the *Miranda* rights.

2

was a convicted felon. Heard was subsequently arrested for being a Felon in Possession of a Firearm, Possession of a Stolen Firearm, and Illegal Carrying of a Firearm. On June 11, 2015, Heard was indicted on one count of possessing a firearm and ammunition while having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

## Discussion

Heard filed this Motion to Suppress Evidence (Doc. 22) alleging that the officers stopped him without probable cause or reasonable suspicion to believe that he had committed a crime. Heard argues that his seizure does not satisfy the *Terry* standard because it was not "justified at its inception" nor was it "reasonably related in scope to the circumstances which justified the interference in the first place." Therefore, Heard argues that because the initial detainment was unlawful, all evidence gathered subsequently, including Heard's confession, should be inadmissible as fruit of the poisonous tree. Neither the Government nor the defendant addressed the issue of whether Heard voluntarily, knowingly, and intelligently waived his *Miranda* rights.

### I. Constitutionality of the Seizure

In *Terry v. Ohio*, the Supreme Court held that police officers may briefly detain individuals on the street, even though there is no probable cause to arrest the person, as long as the officers have a reasonable suspicion that criminal activity is afoot. 392 U.S. 1, 22 (1968) ("[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."). The legality of a *Terry* stop is analyzed under a two-part framework for evaluating the reasonableness of the investigative stop. Under this approach, the Court must determine whether the officers' actions were: (1) "justified at its inception"; and (2) "reasonably

related in scope to the circumstances which justified the interference in the first place." *Id.* at 19–20.

    **A.**    **Justified at its Inception**

Under *Terry v. Ohio*, law enforcement officers can seize an individual if the officer can point to "specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014). The officer's justification for the seizure must be more than an "'inchoate and unparticularized suspicion or hunch' of criminal activity." *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) (quoting *Terry,* 392 U.S. at 27). In determining whether the officer's suspicion was reasonable, the court should not assess factors at play individually but should take into account the totality of the circumstances at issue in the particular case. *See United States v. Sokolow,* 490 U.S. 1, 8 (1989); *Hill*, 752 F.3d at 1033.

In this case, under the totality of the circumstances, the Court finds that the officers had reasonable suspicion to believe that Heard had committed or was about to commit a crime. Specifically, the officers had a reasonable suspicion that Heard had violated the city ordinance prohibiting pedestrians using roadways when a sidewalk is available, as well as a reasonable suspicion that Heard was engaging in drug-related criminal activity. Officer Crisler testified that upon turning onto the service road, he observed Heard walking in the middle of the road.[2] Walking

---

[2] In the defendant's post-hearing memorandum, Heard attacks Officer Crisler's testimony as being inconsistent with video evidence. *Df.'s Post-Hearing Supp. Mem.* 3–5, Doc. 32. When the dash camera video of Officer Crisler's police cruiser begins, Officer Crisler is making a right turn onto the service road after Officer Lake's vehicle had made the same turn. At the first moment that the North Street service road is visible in the video, no one is present in the road. The defendant argues that Officer Crisler had no view of the defendant in the road because his view of the road was blocked by a building to his right until he completed the turn. Thus, according to the defendant, Officer Crisler did not personally observe a traffic violation prior to the stop, and Officer Crisler's only credible reason for stopping the defendant was that he changed directions in a high crime area. *Id.* at 4. The Court is dubious as to whether Officer Crisler personally observed the defendant walking in the middle of the road. However, the Court is not persuaded that Officer Crisler's testimony is unreliable, as no concrete evidence was presented establishing that

4

in the middle of the road, where there is a sidewalk available, is a violation of the Baton Rouge City Code prohibiting pedestrians on roadways. This traffic violation is itself an illegal activity and is thus sufficient to establish reasonable suspicion that Heard had committed a crime.

Moreover, while walking in the middle of the road in a high-drug/high-crime area, Heard abruptly change direction after noticing the police cruisers.[3] Officer Crisler saw Heard discard a piece of paper just before he approached the police cruiser, which Officer Crisler believed may contain evidence of drug activity. Additionally, Officer Crisler observed Heard's mannerisms, and became suspicious that Heard was under the influence of drugs. These facts are more than an "inchoate and unparticularized suspicion or hunch" of criminal activity. Therefore, the Court finds, under the totality of the circumstances here, that the officers had a reasonable suspicion that the defendant had committed or was about to commit a crime, and therefore the seizure of Heard was justified at its inception.

### B.     Reasonably Related in Scope

Under the second prong of *Terry*, the scope of the detention must be carefully tailored to its underlying justification. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Terry*, 392 U.S. at 19. A seizure under *Terry* "must be temporary and last no longer than is necessary to effectuate the

---

Officer Crisler's line of sight was totally blocked by the building located to his right at the time the defendant was in the road.

[3] The Court recognizes that the defendant's mere presence within a high-drug/high-crime area is not sufficient to create a reasonable suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."). Moreover, the Court recognizes that Heard did not run away or otherwise engage in headlong flight after noticing the police cruisers. *See id.* at 124–25 (holding that there is reasonable suspicion when an individual suddenly and without provocation engages in headlong flight to flee from identifiable police officers patrolling a high crime area). However, the Court does note that "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id.*

purpose of the stop." *Florida v. Royer*, 460 U.S. at 500. The court examines whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). A "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 145–46 (1972). In other words, "the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Id.* It is the Government's "burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Florida v. Royer*, 460 U.S. at 500.

Under the circumstances of this case, the Court finds that the seizure was reasonably related in scope to the circumstances which justified the seizure in the first place. The purpose of the stop was to investigate Heard for a traffic violation as well as drug activity. The officers diligently investigated the path they had observed Heard walking to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

Moreover, the length of the detention was reasonable under the circumstances. The officers diligently searched the area for evidence of drug possession and found the brillo within two minutes of seizing Heard. It was only one minute later when the officers found the gun which the defendant was charged with possessing. In total, the officers detained Heard for only three minutes while searching for evidence of drug possession. Several courts have recognized that detentions lasting longer than three minutes are permissible under the Fourth Amendment. *See United States*

*v. Place*, 462 U.S. 696, 709 (1983) (holding that the seizure of luggage for 90 minutes was unreasonable); *United States v. Shabazz*, 993 F.2d 431, 437–38 (5th Cir. 1993) (holding that a seizure for four minutes while officers checked police databases during a traffic stop "imposed no significant Fourth Amendment hardship"); *Sharpe*, 470 U.S. at 681–85 (holding that detaining a person who was suspected of transporting drugs in his truck for 20 minutes pending the arrival of a DEA agent was reasonable). Thus, the Court finds that the seizure of the defendant was sufficiently limited in scope and duration to satisfy the conditions of *Terry*.

## II.     Voluntariness of the Defendant's Statements

While neither party argued the issue, the Fifth Circuit recognized in the context of a custodial interrogation that "when the evidence clearly reflects a question of the voluntariness of a confession," the trial court must raise the issue and hold a hearing *sua sponte*. *United States v. Guanespen-Portillo*, 514 F.3d 393, 402 (5th Cir. 2008). Officer Crisler testified at the suppression hearing that he suspected Heard to be under the influence of crack cocaine. Officer Crisler's observations were corroborated in the video played at the suppression hearing, which showed Heard's mannerisms and behavior to be erratic. The appearance of drug use clearly presents a question of the voluntariness of the statements Heard made during the detention. Therefore, the Court *sua sponte* raises the issue of the potential involuntariness of Heard's statements, and accordingly the Court orders a hearing on the issue.

## Conclusion

Having satisfied the two-part framework under *Terry*, the Court concludes that the officers did not violate the Fourth Amendment when they seized the defendant. Although the Court rejects the grounds raised by the defendant, the Court raises the issue *sua sponte* of the voluntariness of

the defendant's waiver of his *Miranda* rights and orders a hearing on the issue. Accordingly, the Defendant Gerald Heard's Motion to Suppress (Doc. 22) is **DEFERRED** pending a hearing on the issue of the voluntariness of the defendant's *Miranda* waiver.

Signed in Baton Rouge, Louisiana, on November 13, 2015.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**