UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

GERALD WAYNE HEARD

CRIMINAL ACTION

NO. 15-84-JJB-RLB

### RULING ON MOTION TO SUPPRESS

This matter is before the Court on a Motion to Suppress Evidence (Doc. 22) filed by the defendant, Gerald Heard ("Heard"). The United States of America (the "Government") filed an opposition (Doc. 25). Due to the Court's concern over the voluntariness of the defendant's waiver of his *Miranda* rights and the statements he made thereafter, the Court raised the issue *sua sponte* and ordered an evidentiary hearing, which was held on November 30, 2015 ("Second Suppression Hearing"). After the hearing, both the defendant (Doc. 41) and the Government (Doc. 40) submitted post-hearing briefs. The *Miranda* issue is the sole issue for consideration in this ruling.[1] For the reasons stated herein, the defendant's Motion to Suppress Evidence (Doc. 22) is **GRANTED**.

I. **BACKGROUND**

As discussed more fully in this Court's prior ruling (Doc. 34), Baton Rouge Police Department Officers James Crisler ("Officer Crisler") and Howie Lake, II ("Officer Lake") stopped Heard on April 14, 2015. During the stop, Officer Lake conducted a consensual pat down and questioned Heard. Specifically, Officer Lake questioned Heard about his use of drugs and his

---

[1] The Court previously held, in its November 13, 2015 ruling (Doc. 34), that the officers did not violate the defendant's Fourth Amendment rights when they seized him. In addition to the *Miranda* issue, the defendant also filed a Motion to Reconsider Ruling (Doc. 42). The defendant presented no new evidence in the motion, but merely reemphasizes the same maps, photos, and video evidence admitted at the First Suppression Hearing. *Def.'s Supp. Mem.* 2, Doc. 42-1. The Court already considered the evidence and arguments prior to making its initial ruling on this issue, and finds no reason to deviate from its prior ruling. Therefore, the defendant's Motion to Reconsider Ruling (Doc. 42) is **DENIED**.

1

destination. During the course of the interaction, Officer Crisler observed Heard's mannerisms and suspected that Heard may be under the influence of crack cocaine. While Officer Lake questioned Heard, Officer Crisler retraced Heard's path and located a pile of copper brillo, a substance that Officer Crisler recognized as being commonly used as drug paraphernalia. Officer Crisler also discovered a loaded handgun in the path that Heard had walked. Officer Crisler observed that the area around the handgun was wet due to the recent rain but noticed that the firearm was dry. Heard was then handcuffed and seated in the rear of Officer Lake's police cruiser.

Officer Lake verbally advised Heard of his *Miranda* rights. Initially, Heard did not respond. Officer Lake asked a second time whether Heard understood his *Miranda* rights. Again, Heard did not respond. Finally, on the third time he was advised of his *Miranda* rights, Heard indicated that he understood.

Heard provided basic personal identification information such as his name, date of birth, and address. In response to questioning, Heard initially denied having the gun, but later admitted to possessing it. Heard told officers that he was carrying the gun in his pants pocket, but when he saw the police cars approaching, he threw the gun to the ground. Heard admitted to having the gun for three to four days before his arrest. However, he would not disclose where he obtained the gun.

Heard was arrested for being a Felon in Possession of a Firearm, Possession of a Stolen Firearm, and Illegal Carrying of a Firearm. On June 11, 2015, Heard was indicted on one count of possessing a firearm and ammunition while having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

**II.   DISCUSSION**

The Fifth Amendment "protects a defendant from self-incrimination and prohibits the prosecution from using statements stemming from custodial interrogation . . . unless it

demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[2] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A defendant may waive his *Miranda* rights when such a waiver is made "voluntarily, knowingly and intelligently." *Id*. The Government bears the burden to prove by a preponderance of the evidence that the defendant's confession was made voluntarily. *United States v. Garcia Abrego*, 141 F.3d 142, 171 (5th Cir. 1998); *United States v. Montalvo-Rangel*, 437 F. App'x. 316, 319 (5th Cir. 2011) (per curiam). "A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir. 1996).

When a defendant appears to be under the influence of drugs or alcohol, the "mere fact that a defendant had taken drugs prior to giving a statement does not render it inadmissible." *United States v. Taylor*, 508 F.2d 761, 763 (5th Cir. 1975). "The evidence must show the defendant was so affected as to make his statement, after appropriate warnings, unreliable or involuntary." *Id.* This determination relies on the particular facts of each case. *See id.* (relying on the lack of positive testimony as to the amount of drugs consumed by the defendant prior to making his statement); *United States v. Welsh*, 417 F.2d 361, 364 (5th Cir. 1969) (relying on the time elapsed between the defendant's detainment and the subsequent questioning); *United States v. Kreczemer*, 636 F.2d 108, 110 (5th Cir. 1981) (relying on witness testimony, the time elapsed between the defendant's detainment and the statements made by him, and the clarity and coherence of the statements). The court decides issues of fact on motions to suppress, including evaluating the credibility of witnesses. *Kreczemer*, 636 F.2d at 110.

---

[2] There is no dispute that Heard's *Miranda* rights attached when he was questioned in the back seat of the police cruiser.

In *Taylor*, the Court denied the motion to suppress because of the lack of positive testimony attesting to the effect of the drugs on the voluntariness and reliability of the defendant's statements. 508 F.2d at 763. In the instant case, the defendant did not testify at either of the two suppression hearings. Thus, there is no positive testimony that Heard consumed crack cocaine just prior to his arrest. Additionally, the officers did not conduct any on-the-scene tests in order to evaluate the defendant's level of intoxication. Therefore, the only sources of information about when Heard last consumed crack cocaine are Officer Crisler's testimony and the video itself.

In the video, Heard told the officers that it had been a "couple of days" since the last time he smoked crack. *Second Suppression Hr'g Tr.* 8:23, Doc. 38. However, both the video and the officer's testimony suggest otherwise. The video evidence demonstrates that Officer Crisler initially believed that the encounter with Heard would involve drug possession and that he was under the influence of drugs. First, Officer Crisler stated that the stop may involve a "967," an abbreviated reference to Louisiana Revised Statutes 40:967 governing penalties for possession of Schedule II Controlled Dangerous Substances. *First Suppression Hr'g Tr.* 49:25–50:6, Doc. 31. Second, just before reading Heard the *Miranda* warning, Officer Crisler asked, "Why are you twitching so hard? You're high right now aren't you?" *Dash Cam Video Segment 2* at 23:37:33 (Gov. Ex. 6-b). Additionally, Officer Crisler's testimony also confirms that Heard was under the influence of drugs. At the First Suppression Hearing—prior to the Court raising the *Miranda* issue—Officer Crisler testified that he believed Heard was under the influence of crack cocaine. *First Suppression Hr'g Tr.* 52:21–53:1, Doc. 31 ("Well, his initial reaction to see us, his mannerisms. He appeared to be under the influence of some kind of substance when we first talked to him. Just, in my experience of dealing with individuals who are high on crack cocaine, just their mannerisms, the way they talk, the way act, just made—my suspicions just kept rising"). At the

4

Second Suppression Hearing—after the Court raised the *Miranada* issue—Officer Crisler stated that Heard appeared "fairly normal" as they got him over to the police cruiser. *Second Suppression Hr'g Tr.* 6:1, Doc. 38. Although the Government relies on the latter testimony to support their opposition, Officer Crisler's original testimony, along with the police cruiser video, support the conclusion that Heard was under the influence.

The content of the conversation between the defendant and the police officers may reflect the defendant's mental state and whether or not he was intoxicated. *United States v. Wiseman*, 576 F. App'x. 376, 380–81 (5th Cir. 2014) (per curiam). In *Wiseman*, the court denied the defendant's motion to dismiss and relied heavily on the surplus of coherent and sensitive information that the defendant divulged. *Id.* at 380–81. The defendant in *Wiseman* made particularized statements about the subject matter on which he was questioned. *Id.* (the defendant provided his date of birth, wife and children's names, home address, how much drugs each of his gang members were distributing, and how much he charged each member). In this case, although Heard provided accurate information as to his name, date of birth, and address, he could only provide the most basic personal information. Additionally, Heard had difficulty spelling his last name properly.

The time elapsed between the defendant's detainment and police questioning effects the defendant's state of intoxication. *Welsh*, 417 F.2d at 364. In *Welsh*, an officer believed that the defendant was under the influence at the time of the arrest, but the defendant was not interrogated until the following day. *Id.* The court held that the defendant's statements were admissible, as a full day had passed prior to his questioning by the FBI agent. *Id*. As discussed above, it is unclear when Heard last smoked crack cocaine. Although Heard stated that it had been a couple of days since he smoked crack, both the video and Officer Crisler's initial testimony demonstrate that Heard was under the influence at the time he was arrested. Contrary to *Welsh*, there was no delay

between Heard's arrest and the officers' subsequent questioning. As such, Heard did not have time to regain his sobriety prior to police questioning as did the defendant in *Welsh*.

In the instant case, a picture is worth a thousand words. The Court reviewed the videos from the police cruisers and this footage is crucial to the Court's determination. It is readily apparent from the video that Heard was not of sound mind when he made the statements in question. He appears to be confused and nervous, his speech is slurred, the officers must repeat their questions multiple times, and Heard changes his answers repeatedly. Under the totality of the circumstances, the Government has failed to meet its burden to prove that Heard was capable of knowingly, voluntarily, and intelligently making a statement at the time that he was questioned.

### III.   CONCLUSION

For the reasons stated above, the motion to suppress is **GRANTED** as it pertains to those statements made in response to the custodial interrogation. Additionally, the defendant's Motion to Reconsider Ruling (Doc. 42) is **DENIED**.

Signed in Baton Rouge, Louisiana, on February 4, 2016.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**